UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAWRENCE EVANS,

          Petitioner,          Case No. 4:03-cv-155

v.                                        Honorable Robert Holmes Bell

ANDREW JACKSON,

          Respondent.
_____/

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of 15 to 30 years, imposed by the Van Buren County Circuit Court on November 27, 2000, after Petitioner pleaded nolo contendere to second-degree murder, MICH. COMP. LAWS § 750.317. In his amended *pro se* petition (docket #42), Petitioner raises twenty grounds for relief. Respondent has filed an answer to the petition (docket #63) stating that the petition should be denied. Petitioner filed a reply (docket #66). Upon review and applying the AEDPA standards, I find that Petitioner's claims are procedurally defaulted or are without merit. Accordingly, I recommend that the petition be denied.

**Procedural History**

    A.    **Trial Court Proceedings**

The state prosecution arose from the death of Petitioner's wife, Dora Pearl Evans. The prosecutor alleged that Petitioner beat his wife on January 3, 2000, resulting in her death on March 16, 2000. On March 20, 2000, Petitioner was arrested and charged with open murder.

Following a forensic examination conducted on March 23, 2000, Petitioner was found competent to stand trial. A preliminary examination was held on June 6, 2000. At the conclusion of the preliminary examination, the district judge bound Petitioner over to the Van Buren County Circuit Court on the charge of open murder. On September 7, 2000, the trial court conducted an evidentiary hearing on Petitioner's motion to suppress four statements that he made to police regarding his wife's death. (9/7/00 Motion Hearing Transcript (Hearing Tr.), docket #76). The trial court ruled that three of the statements were admissible and one statement was inadmissible. (Hearing Tr., 65-70.)

At a final pre-trial conference held on October 31, 2000, Petitioner was presented with a plea agreement whereby the prosecutor would accept a plea to second-degree murder with a *Cobbs*[1] agreement that he would receive a minimum sentence of no more than fifteen years. (Final Pretrial Tr., 2, docket #73.) On November 2, 2000, Petitioner accepted the plea offer and pleaded nolo contendere to second-degree murder. (Plea Transcript (Plea Tr.), 4, docket #74.) The preliminary examination transcript was used as the factual basis for the plea. (Plea Tr., 8.) The trial court provided the following summary of the evidence presented at the preliminary examination:

> The preliminary examination in this case has indicated in the Village of Decatur on January 3rd, 2000, the decedent was taken from her home and died of injuries that were inflicted on her. The pathologist at the time of the examination, Joyce DeJong, testified to the cause of death and referred to a shearing injury that struck her [head] causing injuries that resulted in her death. The pathologist also indicated that there were a half dozen or more injuries consistent with defensive-type injuries on the right arm and the hand and other injuries that would indicate she was beaten and the only [other] person in the home at the time from anything anyone can determine was the Defendant. Further, Defendant made certain statements intended to be exculpatory

---

[1]*People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993). Under *Cobbs*, the trial judge is allowed to express a tentative sentence as part of the plea negotiation process. If the court is unwilling to abide by the tentative sentence at the time of sentencing, the defendant has an absolute right to withdraw the plea. *See also* MICH. CT. R. 6.310(B)(2)(b).

> about what happened and those statements were grossly inconsistent with the physical evidence and inconsistent sometimes with the statements themselves depending on what was said and when it was said leading to the conclusion that the decedent died as a result of being beaten to dea[th] by the Defendant and the number of blows and the circumstances under which they occurred satisfy this Court that the crime of second degree murder was committed and that the Defendant committed it.

(Plea Tr., 8-9.) The Court also noted that Petitioner's intoxication and lack of clear memory of the events that resulted in his wife's death also supported a no contest plea in this case. (Plea Tr., 5, 10.) On November 27, 2000, the trial court sentenced Petitioner to imprisonment of fifteen to thirty years, in accordance with the *Cobbs* agreement. (Sentencing Transcript, 12, docket #75.)

Petitioner filed a motion to withdraw his plea in the Van Buren County Circuit Court on November 22, 2001, claiming that his plea was not knowingly, understandingly and voluntarily made. At the conclusion of a hearing, the trial court denied Petitioner's motion to withdraw his plea. (Plea Withdrawal Hearing Transcript, docket #77).

### B.   Direct Appeal

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. His brief, which was filed by counsel on February 13, 2002, raised the following claim of error:

> THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW NOLO CONTENDERE PLEA, WHERE THE PLEA WAS NOT KNOWINGLY AND INTELLIGENTLY MADE.

(*See* Def.-Appellant's Br. on Appeal, docket #78.) On April 10, 2002, the Michigan Court of Appeals denied Petitioner's application for leave to appeal for lack of merit in the grounds presented. (*See* 4/10/02 Mich. Ct. App. Ord.), docket #26.)

Petitioner raised the same claim in his application for leave to appeal to the Michigan Supreme Court. By order entered October 29, 2002, the Michigan Supreme Court denied his

application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (*See* Mich. Ord., docket #79.)

Petitioner filed this application for habeas corpus relief on or about October 20, 2003. On December 23, 2003, the Court issued an opinion and order finding that Petitioner failed to exhaust his state-court remedies with regard to all of the claims set forth in the petition.  The Court subsequently issued an order on February 17, 2004, staying proceedings in this action while Petitioner exhausted his unexhausted claims in the state courts.

        **C.**     **State Post-conviction Relief**

Petitioner filed a motion for relief from judgment in the Van Buren County Circuit Court raising nine claims of error.  The circuit court denied Petitioner's motion on February 17, 2004.  Petitioner attempted to file a delayed application for leave to appeal in the Michigan Court of Appeals, but the court of appeals dismissed the application without jurisdiction on April 1, 2005, because the application was not filed within twelve months of the February 17, 2004 order denying Petitioner's motion for relief from judgment.  (4/1/05 Mich. Ct. App. Ord., docket #80.)

Petitioner filed a motion for reconsideration claiming that he had attempted to mail his application for leave to appeal as early as February 7, 2005, but was unable to "corral" a unit manager for purposes of posting his "expedited legal mail" until February 14, 2005.  Petitioner argued that if prisoners were allowed to use postage stamps, his application would have been timely filed.  He further argued that his application for leave to appeal should be deemed "filed" when it was delivered to prison officials on February 14, 2005. The Michigan Court of Appeals denied Petitioner's motion for reconsideration on May 20, 2005. (5/20/05 Mich. Ct. App. Ord., docket #80.) On October 21, 2005, the Michigan Supreme Court denied Petitioner's application for leave to

appeal because it was not persuaded that the questions presented should be reviewed by the court. (10/21/05 Mich. Ord., docket #81.)

Following the conclusion of the proceedings on his motion for relief from judgment, Petitioner filed an amended habeas petition in this case. On December 21, 2005, the Court lifted the stay and ordered service of the amended petition.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th

Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

## Discussion

### I. Procedural Default

Petitioner claimed on direct appeal that his guilty plea was not knowingly and intelligently made. Because his claim was presented on direct appeal to the Michigan Court of

Appeals and the Michigan Supreme Court, it was properly exhausted. The Court will address the merits of Petitioner's claim below.

Petitioner's remaining grounds for habeas relief either were raised for the first time in his motion for relief from judgment or never were presented in the state courts. First, the claims never presented in the state courts clearly are unexhausted. Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Because Plaintiff did not present his claims at each level of the state courts, he fails to satisfy the exhaustion requirement.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). In this case, Petitioner has no available procedure by which to raise the issues he has presented in this application. Under Michigan law, a criminal defendant may file one motion for relief from judgment under

M.C.R. 6.500(G)(1). Petitioner already has filed his one allotted motion. If the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred. *Cone v. Bell*, 243 F.3d 961, 967 (6th Cir. 2001), *rev'd on other grounds*, 535 U.S. 635 (2002). Petitioner no longer has an available state-court remedy by which to exhaust the claims he failed to raise in the state courts; therefore, those claims are procedurally defaulted.

Second, the claims presented for the first time in Petitioner's motion for relief from judgment also are procedurally defaulted. As discussed above, the court of appeals dismissed Petitioner's application for lack of jurisdiction because it was filed more than twelve months after the trial court's order denying Petitioner's motion for relief from judgment. "A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). Because Petitioner's application for leave to appeal was dismissed as untimely by the Michigan Court of Appeals, the claims presented in his motion for relief from judgment are procedurally defaulted. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (Ohio Supreme Court's denial of petitioner's motion for leave to file delayed appeal, apparently because he failed to demonstrate adequate reasons for his failure to file timely notice of appeal, was procedural ruling sufficient to bar federal court review of habeas corpus petition).

In order to obtain habeas review of his procedurally defaulted claims, Petitioner must demonstrate either (1) cause excusing his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547

U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks v. Straub*, 377 F.3d 538, 551-52 (2004. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Petitioner claims that he attempted to mail his application for leave to appeal as early as February 7, 2005, but was unable to "corral" a unit manager for purposes of posting his "expedited legal mail" until February 14, 2005. Petitioner argues that if prisoners were allowed to use postage stamps, his application would have been timely filed. He further contends that his application for leave to appeal should be deemed "filed" when it was delivered to prison officials on February 14, 2005.

None of Petitioner's arguments establish cause to excuse his procedural default. Petitioner had one year in which to file a delayed application for leave to appeal in the Michigan Court of Appeals, but admittedly waited until one week before the deadline to try to file his application. Petitioner's contention that his application for leave to appeal was "filed" when it was delivered to prison officials on February 14, 2005, also is without merit. Under federal law, a pleading is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997). However, under Michigan law, an application is not filed until it is received by the Michigan Court of Appeals.

*See Walker-Bey v. Dep't of Corr.*, 564 N.W.2d 171 (Mich. Ct. App. 1997). Michigan law applies to the filing of pleadings in the state courts. The "mailbox rule" followed in federal court is a matter of rule interpretation, not constitutional requirement. *See Houston v. Lack*, 487 U.S. 266 (1988). Ignorance of the law and the procedural requirements for filing a timely application for leave to appeal is insufficient to establish cause to excuse his procedural default. *See Bonilla,* 370 F.3d at 498; *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995). Furthermore, Petitioner's *pro se* status before the Michigan Court of Appeals is insufficient to establish cause to excuse his procedural default. *See id.* Petitioner, therefore, cannot show cause for his default.

Since both cause and prejudice must be shown to excuse a procedural default, the failure to establish cause eliminates the need to consider prejudice. *Murray*, 477 U.S. at 494-95. In addition, Petitioner did not supplement his claims of constitutional error with a colorable showing of actual innocence so as to demonstrate a fundamental miscarriage of justice which would permit review of his defaulted claims even though cause had not been established. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Murray*, 477 U.S. at 496. Thus, the procedural default grounds for relief presented in Petitioner's habeas corpus petition may not be considered on federal habeas corpus review.

    II.    **Guilty Plea**

Petitioner contends that the trial court should have permitted him to withdraw his plea of nolo contendere because it was made unknowingly and involuntarily. A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered voluntarily and intelligently under the totality of the

circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969).  In order to find a constitutionally valid guilty plea, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, including the elements of the offenses for which he is pleading guilty.  *See Bradshaw v. Stumpf,* 125 S. Ct. 2398, 2405 (2005); *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976);  *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750;  *Machibroda v. United States*, 368 U.S. 487, 493 (1962).  The defendant also must understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493.  Finally, the defendant must have available the advice of competent counsel.  *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973);  *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970).

On direct appeal, Petitioner argued that at the time he entered the plea, he was confused and not in a mental state that allowed him to make a voluntary plea. (Def.-Appellant's Br. in Support, 3, docket #78.)  Petitioner claimed that he repeatedly expressed reluctance to accept the plea offer.  (*Id.* at 3-4.)  For example, at the beginning of the plea hearing, the trial court explained the plea deal offered to Petitioner and asked Petitioner if he was willing to accept the "bargain." (Plea Tr. 2.)  The following exchange ensued between Petitioner and the Court:

    Court:        And it is my understanding that after I'd indicated to you we needed to have some closure on this by 4:30 p.m. today, your attorney

|            |                                                                                                                                                                                |
|------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            | indicates that at his time you're willing to accept that bargain; would that be a correct statement?                                                                           |
| Petitioner: | Yes and no, sir.                                                                                                                                                              |
| Court:     | Okay. Tell me what you mean by that.                                                                                                                                           |
| Petitioner: | I don't consider that a bargain.                                                                                                                                              |
| Court:     | Well, we have to label it that.                                                                                                                                                |
| Petitioner: | Yes, sir.                                                                                                                                                                     |
| Court:     | It is an agreement.                                                                                                                                                            |
| Petitioner: | I wasn't trying to be . . .                                                                                                                                                   |
| Court:     | It is an agreement. You are thinking of the term bargain as something that's a good deal and you're saying that you don't think it's such a good deal but you're willing to enter into it? |
| Petitioner: | Yes.                                                                                                                                                                          |

(Plea Tr. 2-3.) Petitioner also cites to the sentencing hearing where defense counsel told the court that Petitioner "had some reservations and was possibly feeling that he should withdraw his plea," although he was willing to go forward with the sentencing. (Sentencing Tr., 2.) Petitioner further argued that his plea was involuntary because he has a history of severe emotional and mental problems, including alcohol abuse and depression. (*Id.* at 4.) In addition, Petitioner claimed that he suffered a closed head injury in a 1991 car accident that continues to cause panic attacks, erratic behavior, memory loss and blackouts. (*Id.*) Petitioner also argued that he not fully understand the nature of a plea of nolo contendere, and further, did not understand that by pleading guilty, he waived the opportunity to appeal the trial court's decision on the admissibility of his statements to the police. (*Id.* at 5-6.) Finally, Petitioner claimed that the trial court should have allowed him to withdraw his plea because he is innocent. (*Id.* at 6-7.)

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328. Moreover, the AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and a petitioner may overcome this presumption only by presenting "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

In this case, the record clearly supports the trial court's finding that Petitioner's plea was knowing and voluntary. During the plea hearing, Petitioner stated that he understood the maximum sentence that he faced and the rights that he gave up by pleading guilty. (Plea Tr., 4-6.) Petitioner denied that anyone threatened or coerced him to plead guilty. (Plea Tr., 7.) Petitioner also agreed that the plea was his final decision and that he was the person making the decision. (Plea Tr. 7.) While Petitioner claims that he is impaired by mental problems, alcoholism and a closed head injury, the plea record shows that Petitioner understood the trial court's questions and was able to clearly articulate his responses. Moreover, Petitioner was found competent to stand trial after a

forensic evaluation. The mere facts that Petitioner was reluctant to plead guilty or did not consider his plea agreement to be a "bargain" did not render his plea involuntary or unknowing.

Furthermore, in denying Petitioner's motion to withdraw his guilty plea, the trial court found that the plea was knowing and understanding. (Plea Withdrawal Tr., 10.) The court stated in part:

> And factually if you look at what happened here, this is an easy case to remember because dealing with Mr. Lawrence [sic] was rather arduous because he had a great deal of difficulty in making up his mind as to whether or not he really wished to accept this plea bargain and we gave him some additional time to think about that and finally after thinking over the weekend after we placed the offer on the record, he advised his counsel that he wished to accept the offer of the People and the *Cobbs* plea from the Court in limiting the exposure he would face upon sentencing and so we proceeded to sentence. When we got to sentence, we again heard that Mr. Evans had some reservations about having accepted the plea and considered filing a motion to withdraw that plea. Again, he thought about it and advised his counsel he chose not to do so and that's the history of it.
>
> I think its clear if we look at the transcript of the plea and the final pre-trial and the settlement, that we were dealing with a defendant who had some serious concerns and reservations about doing what he was doing, thought it over and decided to do that and then we proceeded to sentence.

(Plea Withdrawal Tr. 9-10.) In light of the plea record and the trial court's findings on Petitioner's motion to withdraw, his plea is presumptively voluntary and intelligent. Petitioner has failed to present clear and convincing evidence that would overcome that presumption. Accordingly, Petitioner is not entitled to habeas corpus relief.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Dated:   November 21, 2008                  /s/  Joseph G. Scoville
                                            United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).